O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

Case No. 5:16-CV-01555 (VEB)

KIM S BATES,

                 Plaintiff,

vs.

NANCY BERRYHILL, Acting
Commissioner of Social Security,

                 Defendant.

DECISION AND ORDER

## I. INTRODUCTION

       In November of 2010, Plaintiff Kim S. Bates applied for Disability Insurance

benefits under the Social Security Act. The Commissioner of Social Security denied

the application.[1]

---

[1] On January 23, 2017, Nancy Berryhill took office as Acting Social Security Commissioner. The
Clerk of the Court is directed to substitute Acting Commissioner Berryhill as the named defendant
in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Plaintiff, by and through her attorneys, Disability Advocates Group, Michelle J. Shvarts, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 14, 16, 26, 27). On November 21, 2017, this case was referred to the undersigned pursuant to General Order 05-07. (Docket No. 15).

## II. BACKGROUND

Plaintiff applied for Disability Insurance benefits on November 2, 2010, alleging disability beginning November 16, 2009. (T at 144).[2] The application was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

On July 26, 2012, a hearing was held before ALJ Tamara Turner-Jones. (T at 43). Plaintiff appeared with her attorney and testified. (T at 67-86). The ALJ also received testimony from Gloria Lasoff, a vocational expert. (T at 86-90).

On October 25, 2012, ALJ Turner-Jones issued a written decision denying the application for benefits. (T at 141). On October 31, 2013, the Appeals Council remanded the case for further review. (T at 161).

[2] Citations to ("T") refer to the administrative record at Docket No. 20.

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

A second administrative hearing was held on November 4, 2014, before ALJ Mark Greenburg. Plaintiff appeared with her attorney and testified. (T at 97, 112-130). The ALJ also received testimony from Troy Scott, a vocational expert (T at 132-37) and Dr. John Morse, a medical expert. (T at 99-111).

On November 25, 2014, ALJ Greenburg issued a written decision denying the application for benefits. (T at 41-63). The ALJ's decision became the Commissioner's final decision on May 26, 2016, when the Appeals Council denied Plaintiff's request for review. (T at 1-7).

On July 15, 2016, Plaintiff, acting by and through her counsel, filed this action seeking judicial review of the Commissioner's denial of benefits. (Docket No. 1). The Commissioner interposed an Answer on December 8, 2016. (Docket No. 19). The parties filed a Joint Stipulation on March 3, 2017. (Docket No. 24).

After reviewing the pleadings, Joint Stipulation, and administrative record, this Court finds that the Commissioner's decision must be reversed and this case remanded for calculation of benefits.

## III. DISCUSSION

### A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot, considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment(s)

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work which was performed in the past. If the claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the

Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner]  may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review,

the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

C. **Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 16, 2009, the alleged onset date, and met the insured status requirements of the Social Security Act through December 31, 2014 (the "date last insured"). (T at 47). The ALJ found that Plaintiff's fibromyalgia; degenerative joint

disease; degenerative disc disease; fifth metatarsal fracture of the right foot, status post curettage and debridement; mild cervical spine disease; pituitary disorder; cardiomyopathy; anterior cruciate ligament sprain and meniscal tear, status post arthroscopic debridement and partial lateral meniscectomy were "severe" impairments under the Act. (Tr. 47).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 29).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567 (b), with the following limitations: she can stand for 1 hour at a time; sit for 2 hours at a time; sit for 8 hours in a workday; walk for 30 minutes at a time, for a maximum of 4 hours per day; occasionally kneel, crouch, crawl, climb ladders/ropes/scaffolds; frequently balance, stoop, climb ramps and stairs; occasionally reach in all directions and push/pull with the left side; frequently reach and occasionally push/pull with the right side; frequent fine motor and gross motor handling, fingering, and feeling bilaterally; no more than frequent exposure to unprotected heights, moving machinery, humidity and wetness, pulmonary irritant, extremes of temperature vibrations; and limited to unskilled work. (T at 49).

The ALJ concluded that Plaintiff could not perform her past relevant work as an administrative assistant, medical records clerk, private branch exchange operator, or radiology assistant. (T at 54). However, considering Plaintiff's age (46 years old on the alleged onset date), education (at least high school), work experience, and residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform. (T at 55-56).

Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act between November 16, 2009 (the alleged onset date) and November 25, 2014 (the date of the decision) and was therefore not entitled to benefits. (T at 56). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-7).

**D.    Disputed Issues**

As set forth in the Joint Stipulation (Docket No. 24, at p. 3), Plaintiff offers three (3) main arguments in support of her claim that the Commissioner's decision should be reversed. First, she argues that the ALJ erred by finding her depression to be a non-severe impairment. Second, Plaintiff contends that the ALJ did not properly assess the medical opinion evidence. Third, she challenges the ALJ's credibility determination. This Court will address each argument in turn.

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

# IV. ANALYSIS

## A.     Step Two Analysis

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a "severe" impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c).   The fact that a claimant has been diagnosed with and treated for a medically determinable impairment does not necessarily mean the impairment is "severe," as defined by the Social Security Regulations. *See, e.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). To establish severity, the evidence must show the diagnosed impairment significantly limits a claimant's physical or mental ability to do basic work activities for at least 12 consecutive months. 20 C.F.R. § 416.920(c).

The step two analysis is a screening device designed to dispose of *de minimis* complaints. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "[A]n impairment is found not severe . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303 (9th Cir. 1988) (quoting SSR 85-28).   The claimant bears the burden of proof at this stage and the "severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs."

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

SSR 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situations." *Id.*

When evaluating the severity of mental impairments, the Regulations also require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis outlined above. 20 C.F.R. § 404.1520a. The technique first requires a determination of whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of the claimant's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R § 404.1520a(c)(3). These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. 20 C.F.R. § 404.1520a(d)(1). The ALJ must "document a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

In this case, the ALJ concluded that Plaintiff's depressive disorder was a medically determinable impairment, but found that the impairment did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and was, therefore, non-severe. (T at 47). In particular, the ALJ found that Plaintiff had mild limitation with regard to activities of daily living, mild limitation in social functioning, mild limitation with respect to concentration, persistence, or pace, and no episodes of decompensation of extended duration. (T at 48).

This Court finds this aspect of the ALJ's decision supported by substantial evidence. Dr. Romulado Rodriguez performed a consultative psychiatric evaluation in February of 2011. Dr. Rodriguez diagnosed major depressive disorder, in remission. (T at 687). He assigned a Global Assessment of Functioning ("GAF") score[3] of 70 (T at 687). "A GAF of 61-70 indicates '[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.'" *Tagger v. Astrue*, 536 F. Supp. 2d 1170, 1174 n.8 (C.D. Cal. 2008). Dr. Rodriguez assessed minimal limitations with regard to Plaintiff's ability to perform basic work

---

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

activities. (T at 688).  The ALJ reviewed the psychiatric treatment history, which documented complaints of depressive symptoms, but also showed no significant evidence of diminished concentration, impaired memory, or limitations inconsistent with the mental demands of unskilled work. (T at 48-49).

Dr. K. Loomis and Dr. J. Berry, non-examining State Agency review physicians, reviewed the record and concluded that Plaintiff did not have a severe mental impairment. (T at 48, 691-701, 725-26).  "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also see also* 20 CFR § 404.1527 (f)(2)(i)("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.").

In sum, this Court finds no error with regard to the ALJ's step two analysis, which was supported by substantial evidence.  Moreover, even assuming *arguendo* that the ALJ erred in finding that Plaintiff's depression was non-severe, any error in that regard was harmless because the ALJ considered that condition when

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

determining Plaintiff's RFC, which included a limitation to unskilled work. (T at 49). *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

## B.    Medical Opinion Evidence

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The courts have recognized several types of evidence that may constitute a specific, legitimate reason for discounting a treating or examining physician's medical opinion.  For example, an opinion may be discounted if it is contradicted by the medical evidence, inconsistent with a conservative treatment history, and/or is based primarily upon the claimant's subjective complaints, as opposed to clinical findings and objective observations. *See Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

In the present case, Plaintiff challenges the ALJ's consideration of opinions provided by three treating providers. The record also contains assessments by consultative examiners, a medical expert who testified at the second administrative hearing, and non-examining State Agency review consultants. This Court will summarize the various medical opinions and then discuss the ALJ's consideration of them.

### 1. Dr. Tennant

Dr. Forest Tennant, Plaintiff's treating pain management physician, provided a report dated May 7, 2011. Dr. Tennant described Plaintiff as "totally disabled." (T at 712). He noted that she had "intractable pain" caused by fibromyalgia, osteoarthritis, chronic joint pain, hypopituitarism, foot surgeries, two C-sections, and a hysterectomy. (T at 712). Dr. Tennant described Plaintiff's prognosis as "poor."

(T at 713). He saw "no hope of improvement as [Plaintiff's] discipline is insufficient to hold gainful employment." (T at 713).

Dr. Tennant opined that Plaintiff could not sit continuously in a work setting, could sit for a maximum of 2 hours in an 8-hour workday, and stand/walk for 0-1 hours in an 8-hour workday. (T at 716). He assessed that Plaintiff could occasionally lift/carry less than 10 pounds, but never more than that. (T at 717). He concluded that Plaintiff would have significant limitations with regard to repetitive reaching, handling, fingering, or lifting. (T at 717). Dr. Tennant believed Plaintiff's symptoms were likely to increase if she was placed in a competitive work environment. (T at 718). He opined that Plaintiff was not a malingerer, was incapable of even "low stress" work, and would miss work more than 3 times per month due to her impairments or treatment. (T at 719-20).

## 2. Dr. Ramaswamy

In January of 2013, Dr. Pharmarajan Ramaswamy, Plaintiff's treating rheumatologist, completed an impairment questionnaire. He diagnosed fibromyalgia, degenerative disc disease of the spine, osteoarthritis, and inflammatory arthritis. (T at 949). He described Plaintiff's prognosis as "guarded." (T at 949). Dr. Ramaswamy reported that Plaintiff's pain was constant while she was awake and aggravated by activity and stress. (T at 952). He opined that Plaintiff could sit for 3

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

hours in an 8-hour workday day and stand/walk for 0-1 hours. (T at 952). Dr. Ramaswamy concluded that Plaintiff could occasionally lift/carry less than 10 pounds, but never more than that. (T at 953). He reported that Plaintiff was not a malingerer. (T at 953). Dr. Ramaswamy believed Plaintiff was incapable of even "low stress" work and would likely be absent from work more than 3 times per months due to her impairments or treatment. (T at 954).

### 3. Dr. Johnson

In April of 2012, Dr. Vance Johnson, a treating physician, completed an impairment questionnaire. Dr. Johnson diagnosed thoracic spondylosis, unspecified myalgia, thoracic facet athropathy, and myofascial pain. (T at 867). He opined that Plaintiff could not sit, stand, or walk for more than 1 hour in an 8-hour workday. (T at 869). Dr. Johnson concluded that Plaintiff could perform no lifting or carrying and had significant limitation in doing repetitive reaching, handling, fingering, or lifting. (T at 870). He reported that Plaintiff was not a malingerer, was capable of moderate stress work, but would miss work about 2 to 3 times per month due to her impairments or treatment. (T at 872).

### 4. Non-Treating Source Opinions

Dr. Romulado Rodriguez performed a consultative psychiatric evaluation in February of 2011. Dr. Rodriguez diagnosed major depressive disorder, in remission.

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

(T at 687). He assessed minimal psychiatric limitations with regard to Plaintiff's ability to perform basic work activities. (T at 688).

Dr. Babak Zamiri performed a consultative rheumatology evaluation in May of 2014. Dr. Zamiri diagnosed fibromyalgia, osteoarthritis involving several sites, depression with anxiety, and chronic pain syndrome. (T at 1060). He opined that Plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. (T at 1053). Dr. Zamiri concluded that Plaintiff could sit for 8 hours, stand for 6 hours, and walk for 4 hours in an 8-hour workday. (T at 1054). He assessed some limitation with regard to Plaintiff's ability to use her hands and feet for repetitive motions. (T at 1055).

In February of 2011, Dr. Michelotti, a State Agency review physician, reviewed the record and opined that Plaintiff could lift/carry at a "light work" exertional level; could stand and walk for 6 hours in an 8-hour workday, and sit for up to 6 hours in an 8-hour workday. (T at 707-09). He assessed no limitations with regard to pushing or pulling, found no manipulative or environmental limitations, but concluded that Plaintiff was limited to occasional postural activities. (T at 707-09). Dr. Berry, another State Agency review physician, reviewed the record evidence in August 2011, and reaffirmed Dr. Michelotti's findings. (T at 725-26).

Dr. John Morse reviewed the record and testified as a medical expert during the second administrative hearing. He assessed the following medically determinable impairments: fibromyalgia, osteoarthritis involving several sites, depression, and chronic pain. (T at 101-102). Dr. Morse opined that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally; sit for 6 hours in an 8-hour workday; stand/walk for 6 hours in an 8-hour work day with no additional push/pull limitations; limited to frequent use of ramps and stairs, but only occasional climbing of ladders, ropes, or scaffolds; and frequent stooping, kneeling, crouching, and crawling. (T at 104).

Dr. Morse explained that the treating physician reports were "somewhat vague," which caused "some difficulty [in] interpreting them." (T at 105). On cross-examination, Dr. Morse conceded that he did not "really have a clear understanding of what fibromyalgia is," but stated that he did recognize it as an impairment and explained that he was assessing Plaintiff's limitations based on that diagnosis. (T at 105-106). He believed Plaintiff's osteoarthritis was a reasonable explanation for her joint pain. (T at 106).

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

### 5.    Consideration of Medical Opinion Evidence

The ALJ gave little weight to the opinions of Dr. Tennant, Dr. Johnson, and Dr. Ramaswarmy, finding them insufficiently supported by the record as a whole. (T at 54). This Court finds the ALJ's decision flawed.

In justifying his decision to discount the treating provider assessments, the ALJ referenced MRI imaging studies and noted the lack of nerve root impingement, severe stenosis, or neurological deficits. (T at 51-52). He also referenced the fact that no physician had recommended surgery. (T at 51). However, such findings and recommendations would not follow from a fibromyalgia diagnosis, so their absence does nothing to contradict the treating physicians' assessments. *See Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017)(noting that "diagnosis of fibromyalgia does not rely on X-rays or MRIs").

The ALJ also referenced the lack of neurological deficits on physical examination, such as loss of motor strength. (T at 52). Again, these findings are not to be expected with fibromyalgia and, thus, their absence does not provide a basis for discounting the treating provider opinions. Fibromyalgia is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id*.

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

The ALJ cited the assessments of the non-treating providers in support of his decision, but those assessments are presumptively entitled to less weight than those offered by treating providers. *Id.* at 593.

Moreover, Dr. Morse, the medical expert who testified at the hearing, admitted he did not "really have a clear understanding of what fibromyalgia is," had "not utilized it in [his] practice," and was, as such, "perhaps not the expert to comment on it." (T at 105). The ALJ then afforded "great weight" to Dr. Morse's opinion regarding Plaintiff's limitations arising from fibromyalgia. In contrast, the ALJ afforded little weight to the assessments of three treating physicians, including Dr. Ramaswamy, Plaintiff's treating rheumatologist. However, a rheumatologist's specialized knowledge is "particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community." *Benecke*, 379 F.3d at 594 n.4. Accordingly, the Ninth Circuit has generally "given a rheumatologist's opinion of a claimant's fibromyalgia 'greater weight than those of the other physicians because it is an opinion of a specialist about medical issues related to his or her area of specialty.'" *Revels v. Berryhill*, 874 F.3d 648, 664 (9th Cir. 2017)(citing *Benecke*, 379 F. 3d at 594 n.4).

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

In sum, the ALJ erred by "discounting the opinions of [Plaintiff's] treating physicians" by "effectively requiring objective evidence for a disease that eludes such a measurement." *Benecke*, 379 F.3d at 594.

## C.    Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

In this case, Plaintiff testified as follows: She is not able to work due to severe joint pain. (T at 50). She leaves the house only to go to the grocery store or pharmacy. (T at 114-15). Most days are spent watching television, readings, or watching movies on her laptop. (T at 118-19). Her minimum pain level is 7 out of 10. (T at 121). Standing is limited to 15-30 minutes at a time and sitting is limited to 30 minutes. (T at 116-17). She uses a wheelchair. (T at 116).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but found that her statements regarding the intensity, persistence, and limiting effects of the symptoms were not fully credible. (T at 51).

For the reasons that follow, this Court finds the ALJ's decision not supported by substantial evidence. Once again, the ALJ relied on the lack of objective findings (such as the lack of nerve root impingement, severe stenosis, or neurological deficits), without adequately accounting for the fact that a claimant with fibromyalgia would not be expected to have such findings. *See Coleman v. Astrue,* 423 F. App'x 754, 755 (9th Cir. 2011) (holding that ALJ erred by "rel[ying] on the absence of objective physical symptoms of severe pain as a basis for disbelieving [claimant's] testimony regarding" effects of fibromyalgia symptoms). The ALJ also cited the lack of "evidence of neurological deficits on physical examination, such as

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

loss of motor strength in the upper and lower extremities." (T at 52). However, it is characteristic of fibromyalgia that persons who suffer from it "have muscle strength, sensory functions, and reflexes that are normal." *Cash v. Berryhill*, 2018 U.S. Dist. LEXIS 13242, at \*18 (S.D. Cal. Jan. 26, 2018)(quoting *Revels*, 874 F.3d at 656).

The ALJ also noted that Plaintiff had not been "described as a surgical candidate." (T at 52). However, it is not clear from the record that surgery is even a "medically available or acceptable treatment[] for fibromyalgia." *Graf v. Astrue*, 2011 U.S. Dist. LEXIS 25703, at \*11 (C.D. Cal. Mar. 11, 2011).

Lastly, the ALJ found Plaintiff's complaints inconsistent with her activities of daily living. (T at 50). This analysis is flawed. First, the ALJ relied on function reports from 2010-11 without adequately accounting for Plaintiff's testimony that her condition had gotten progressively worse. (T at 122). Second, the ALJ did not account for the "wax and wane" of Plaintiff's symptoms, which is commonly associated with fibromyalgia. SSR 12-2 "recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'good days and bad days.'" *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017). Dr. Tennant, a treating physician, opined that Plaintiff's pain would likely be exacerbated by work stress. (T at 718).

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)).

Third, Plaintiff's subjective complaints were supported by the assessments of her treating physicians, who uniformly reported that Plaintiff was not a malingerer.

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

1  The ALJ erred in discounting the treating physician opinions for the reasons stated

2  above.

3  The ALJ's decision to discount Plaintiff's credibility cannot be sustained.

4  **D.    Remand**

5  In a case where the ALJ's determination is not supported by substantial

6  evidence or is tainted by legal error, the court may remand for additional

7  proceedings or an immediate award of benefits. Remand for additional proceedings

8  is proper where (1) outstanding issues must be resolved, and (2) it is not clear from

9  the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379

10  F.3d 587, 593 (9th Cir. 2004).

11  In contrast, an award of benefits may be directed where the record has been

12  fully developed and where further administrative proceedings would serve no useful

13  purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Courts have

14  remanded for an award of benefits where (1) the ALJ has failed to provide legally

15  sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that

16  must be resolved before a determination of disability can be made, and (3) it is clear

17  from the record that the ALJ would be required to find the claimant disabled were

18  such evidence credited. *Id*. (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th

19

20

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988)).

Here, the ALJ failed to provide legally sufficient reasons for discounting the assessments of three treating physicians and Plaintiff's subjective testimony, all of which demonstrated pain and limitation inconsistent with even sedentary work activity. The record was extensively developed and there are no outstanding issues. It is clear from the record that the evidence improperly discounted by the ALJ establishes disability if credited. As such, this Court finds that a remand for calculation of benefits is the appropriate remedy.

DECISION AND ORDER – BATES v BERRYHILL 5:16-CV-01555-VEB

# V. ORDERS

IT IS THEREFORE ORDERED that:

Judgment be entered REVERSING the Commissioner's decision and REMANDING this action for the calculation of benefits, and it is further ORDERED that

The Clerk of the Court shall file this Decision and Order, and serve copies upon counsel for the parties, and CLOSE this case without prejudice to a timely application for attorneys' fees and costs.

DATED this 16th day of March, 2018,

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE